**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Northeast Credit Union**

**v.** Case No. 09-cv-71-PB
Opinion No. 2010 DNH 200

**Chicago Title Insurance Company**

**MEMORANDUM AND ORDER**

Northeast Credit Union is seeking to hold Chicago Title Insurance Company liable for losses Northeast suffered when a settlement agent misappropriated funds that he had agreed to hold in escrow for Northeast's benefit. Chicago Title denies that it is liable for the settlement agent's misdeeds and has moved for summary judgment. For the reasons set forth below, I grant Chicago Title's motion.

## I. BACKGROUND

This dispute stems from the misconduct of former attorney Robert Steuk and his title insurance agency, Warranty Title. Warranty provided various settlement services in connection with real estate closings. Warranty would obtain title insurance, conduct closings, record documents and hold funds obtained from the parties in escrow. Northeast, a credit union based in

Portsmouth, New Hampshire, had utilized Warranty's services for more than 20 years. Since at least 2002, Warranty had also served as a title insurance agent for Chicago Title.

In the summer of 2007, Northeast retained Warranty to provide closing and escrow services in connection with the refinancing of a home owned by King and Lenare Sanborn. Northeast intended to extinguish two prior mortgages it held on the Sanborn property and replace them with a single new mortgage. In connection with the refinancing, Northeast deposited $188,000 into an escrow account held by Warranty. Most of the funds (approximately $160,000) were earmarked for repayment to Northeast in exchange for the release of its prior mortgages. Warranty also obtained title insurance for the property from Chicago Title.

After the closing, Northeast provided Warranty with discharges for its two prior mortgages. Warranty recorded the discharges along with Northeast's new mortgage and issued Northeast three checks in payment for the release of the prior mortgages. The checks bounced, and it was later determined that Steuk and Warranty Title had misappropriated the funds.

## II.   STANDARD OF REVIEW

A summary judgment motion should be granted when the record

reveals "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For the purposes of summary judgment, an issue is "genuine" if it may reasonably be resolved by the jury in favor of either party. Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st. Cir. 2008). The substantive law underlying a claim determines if a fact is material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence submitted in support of the motion for summary judgment must be considered in the light most favorable to the nonmoving party, indulging all reasonable inferences in its favor. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

## III. ANALYSIS

Northeast seeks to hold Chicago Title liable on two distinct theories.[1] First, it argues that Chicago Title is liable for

[1] Northeast alludes to a third potential argument based on a "closing protection letter" that allegedly was issued to Warranty by Chicago Title's sister company, Ticor Insurance, years prior to the Sanborn closing. A closing protection letter is a letter in which "the underwriter agrees to indemnify the lender for any problems that arise from the closing agent's failure to properly apply the funds, as set forth in the closing instructions, and the title insurance commitment." Ticor Title Ins. Co. v. Nat'l

Warranty's misappropriation of the escrow funds because the agency agreement between Chicago Title and Warranty expressly authorized Warranty to conduct escrow activities on Chicago Title's behalf. Alternatively, it claims that Chicago Title is liable under the title insurance policy Chicago Title issued covering the property. Neither argument is persuasive.

**A. The Agency Relationship**

Northeast contends that Chicago Title is liable for Warranty's misappropriation because the Issuing Agency Contract between the two businesses expressly authorized Warranty to undertake escrow services on Chicago Title's behalf.[2]

---

Abstract Agency, Inc., No. 05-CV-73709-DT, 2008 WL 2157046, at *5 (E.D. Mich. 2008). Northeast's reference to a closing protection letter cannot support a viable claim against Chicago Title for at least two reasons. First, neither party has been able to locate the letter and Northeast has offered no proof that the letter was ever issued. Second, even if the letter had been issued, it cannot serve as a basis for holding Chicago Title liable because the letter was allegedly issued by Ticor, a distinct legal entity. For similar reasons, the fact that Northeast and Ticor may at one time have envisioned that Ticor might assume liability for Warranty's escrow activities tells us little about whether Chicago Title authorized Warranty to act as its agent for such purposes with respect to the Sanborn refinancing.

[2] Northeast does not argue that Chicago Title is liable based on an implied agency relationship or because Warranty had apparent authority to act on Chicago Title's behalf. Nor does it argue that an agency relationship can be inferred from a course of dealing between the parties. Thus, I only consider whether Chicago Title can be held liable for Warranty's actions based on the terms of the Issuing Agency Contract.

A principal grants express authority for an agent to act on its behalf when the principal "explicitly manifests its authorization of the actions of its agent." Demetracopoulos v. Strafford Guidance Ctr., 536 A.2d 189, 192 (N.H. 1987). An agent's actions are not expressly authorized merely because they are not explicitly excluded from the principal's grant of authority. See id. at 192-93; Restatement (Second) of Agency § 7 (1958). Instead, for an agent to act with express authority, his actions must be specifically authorized by the principal. See Demetracopoulos, 536 A.2d at 192-93 (holding that executive director of non-profit corporation lacked express authority to hire another individual where contract exceeded the director's specific hiring guidelines laid out in the agency's bylaws).

In the present case, Chicago Title appointed Warranty to act as "an Agent of [Chicago] for the promoting and transacting of a title insurance business" and authorized Warranty to "validate, countersign, issue and deliver commitments, policies and endorsements of [Chicago]." Chicago Title Ins. Co. Issuing Agency Contract, ECF No. 12-10. Although Warranty also agreed in the Issuing Agency Contract to indemnify Chicago Title for losses resulting from the "misappropriation of escrow or closing funds by the Agent," an agent's agreement to indemnify its principal does not authorize the agent to act for the principal on matters

covered by the indemnification. Nor is it appropriate to infer an express grant of authority with respect to closing services from the fact that Chicago Title did not explicitly limit Warranty's ability to act as its closing agent with respect to closings. Under the circumstances presented by this case, a grant of express authority cannot be inferred from silence.

**B. <u>Coverage Under The Title Insurance Policy</u>**

Northeast also asserts that its loss is covered under the title insurance policy issued by Chicago Title. Under Northeast's theory, because Northeast was entitled to rescind the discharges of its prior two mortgages after Warranty's checks were returned for insufficient funds, and because such a rescission would create a title defect with respect to Northeast's new mortgage, its loss should be covered by the title insurance policy issued by Chicago Title. While these actions could arguably transform Warranty's misappropriation into an insurable event under the policy, Northeast's hypothetical actions are subject to a policy exclusion.

The title insurance policy at issue is subject to various "Exclusions From Coverage." One such exclusion is for "[d]efects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant." Chicago Title Ins. Policy, ECF No. 12-6. If

Northeast were to rescind its prior discharges, its new mortgage would be subject to its two pre-existing mortgages, thereby creating a defect in the title insured by Chicago Title. However, this defect would have been created by Northeast's own actions (i.e. its decision to rescind its prior discharges) and would amount to a "[d]efect[], lien[], [or] encumbrance[] . . . created, suffered [or] assumed" by Northeast (the insured claimant). Therefore, had Northeast actually proceeded along these lines, its loss as a result of such a defect would be excluded.

## III. CONCLUSION

Northeast's loss, while unfortunate, was the consequence of the misdeeds of Robert Steuk and his company, Warranty Title. Liability for Steuk's actions cannot be transferred to Chicago Title. No express authority for closing and escrow services can be divined from the Issuing Agency Contract between Chicago Title and Warranty. Moreover, Chicago Title's insurance policy did not cover either Steuk's transgressions or the hypothetical domino-effect proposed by Northeast. As a result, defendant's motion for summary judgment is granted (Doc. No. 12). The clerk is directed to enter judgment and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

November 23, 2010

cc: Lauren S. Irwin, Esq.
Russell F. Hilliard, Esq.
Jonathan M. Shirley, Esq.